IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PALMER HOLDINGS AND INVESTMENTS, INC., et al.,<br><br>                    Plaintiffs,<br><br>vs.<br><br>INTEGRITY INSURANCE CO., et al.,<br><br>                    Defendants. | No. 4:20-cv-154-JAJ<br><br><br>**ORDER** |

This matter comes before the Court pursuant to Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted filed on October 2, 2020. [Dkt. No. 20]. Plaintiffs filed a Resistance on October 26, 2020. [Dkt. No. 29]. Defendants replied to Plaintiffs' Resistance on November 17, 2020. [Dkt. No. 35]. Plaintiffs included two affidavits in its resistance to Defendants' Motion to Dismiss, and Defendant filed a Motion to Strike these affidavits from Plaintiffs' resistance on November 16, 2020. [Dkt. No. 34]. Plaintiffs filed a Resistance to the motion to strike on November 30, 2020 [Dkt. No. 36], and Defendants replied on December 7, 2020. [Dkt. No. 37].  For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED** and Defendants' Motion to Strike is **DENIED**.

## I.      Introduction

### A.  Background

Plaintiffs are businesses operating and managing various restaurants in Polk County, Iowa. Pls.' Am. Compl. [Dkt. No. 17], ¶ 3. Plaintiffs' Amended Complaint alleges they purchased Business Income and Civil Authority insurance from Defendants. *Id.* ¶ 10. Plaintiffs did not attach the insurance policy to the original Complaint or Amended Complaint, but Defendants attached the policy to their Answer to Plaintiffs' original Complaint. [Dkt. No. 5-1]. The policy is identified in the Amended Complaint and is integral to and embraced by Plaintiffs' claims. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citations omitted). Reynolds's proclamation is also integral to and embraced by Plaintiffs' claims. As such, the Court may consider the policy and the proclamation without converting Defendants' Motion to Dismiss into a motion for summary judgment. *See id.* (citations omitted).

1

On March 17, 2020, Iowa Governor Kim Reynolds issued a proclamation related to the COVID-19 pandemic. In relevant part, the proclamation stated:

> All Restaurants and Bars are hereby closed to the general public except that to the extent permitted by applicable law, and in accordance with any recommendations of the Iowa Department of Public Health, food and beverages may be sold if such food or beverages are promptly taken from the premises, such as on a carry-out or drive-through basis, or if the food or beverage is delivered to customers off the premises.

Office of the Governor of Iowa Kim Reynolds, *Gov. Reynolds Issues a State of Public Health Disaster Emergency*, iowa.gov, https://governor.iowa.gov/press-release/gov-reynolds-issues-a-state-of-public-health-disaster-emergency (Mar. 17, 2020).

Plaintiffs' claim they are entitled to coverage under their insurance policy with Defendants. Pls.' Am. Compl. [Dkt. No. 17], ¶ 65. Specifically, they allege they are entitled to coverage under the Business Income, Extra Expense, and Civil Authority provisions of their policy. *Id.* Additionally, Plaintiffs contend Defendants should be estopped from invoking the Virus Exclusion provision of the policy. *Id.* ¶ 80.

In relevant part, the Business Income provision states:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Defs.' Ans., Affirm. Defs., & Jury Demand, Ex. 1 [Dkt. No. Dkt. No. 5-1 at 38].

The Extra Expense provision states, in relevant part:

> We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to the property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 40.

The Civil Authority provision states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> > (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage,

2

and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 40–41.

The Virus Exclusion states:

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

. . .

j. Virus or Bacteria

(1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(2) However, the exclusion in Paragraph (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion i.

(3) With respect to any loss or damage subject to the exclusion in Paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".

*Id*. at 48, 50.

The policy defines "Period of Restoration" as follows:

9. "Period of Restoration":

a. means the period of time that:

(1) Begins:

(a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

(b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage; Caused by or resulting from any Covered Cause of Loss at the described premises; and

(2) Ends the earlier of:

> (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>
> (b) The date when business is resumed at a new permanent location…

*Id.* at 63. "Property damage" is defined in Section II – Liability as including "loss of use of tangible property that is not physically injured . . . ." *Id.* at 78.

The Ordinance or Law Exclusion provides:

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> a. Ordinance Or Law
>
> > (1) The enforcement of any ordinance or law:
> >
> > > (a) Regulating the construction, use or repair of any property;
> >
> > . . .
> >
> > (2) This exclusion, Ordinance or Law, applies whether the loss results from:
> >
> > > (a) An ordinance or law that is enforced even if the property has not been damaged . . . .

*Id.* at 48.

## 1. Plaintiffs' Claims

Plaintiffs' Amended Complaint contains several allegations that are incorporated into the final Counts. In relevant part, Plaintiffs allege:

> 10. To protect its businesses in the event they suddenly had to suspend operations for reasons outside of their control, Plaintiffs purchased Businessesowners' Coverage that included both Business Income and Civil authority insurance coverage from Illinois Casualty Company.
>
> . . .
>
> 13. The policy in question was a blanket business personal property coverage form providing for coverage that would pay for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> . . .

20. The policies do not define the phrase "direct physical loss of or damage to….", nor do they define "direct", "physical", "loss", or "damage" individually.

21. The use of the disjunctive "or" in the phrase "direct physical loss of or damage to" means that coverage is triggered if either a physical loss of property or damage to property occurs.

22. The Policies' use of the disjunctive "or" between the terms "physical loss" and "damage" necessarily means that either a "loss" or "damage" is required, and that "loss" is distinct from "damage."

23. The Policies do not state or otherwise define "loss" to require an actual alteration of property.

24. At the time Plaintiffs purchased the Policies, courts had held on numerous occasions that any condition making it impossible to use property for its intended use constituted "physical loss or damage to property."

. . .

38. On March 17, 2020, Iowa Governor Kim Reynolds issued a proclamation closing all bars and restaurants from dine-in or in-person service.

. . .

40. The action of this Civil Authority resulted in the necessary suspension of Plaintiffs' operations as they economically could not operate their businesses solely on a take-out or delivery basis.

41. The proclamation caused "direct physical loss of or damage to" Plaintiffs' covered property under the Policy by precluding Plaintiffs from conducting their operations, precluding customers from patronizing the business, and otherwise frustrating the intended purposed of Plaintiffs' businesses, all thereby causing the necessary suspension of operations during a period of restoration.

42. Governor Reynolds' March 17, 2020 Order prohibited access to Plaintiff's Covered Property, and the area immediately surrounding the Covered Property, in response to dangerous physical conditions resulting in and from a Covered Cause of Loss.

43. Losses caused by COVID-19 and/or the Governor Reynolds' proclamation triggered the Business Income, Extra Expense, and Civil Authority provisions of the Policy.

. . .

45. Plaintiffs, in an effort to mitigate their income losses, have attempted to provide curb service, take-out services, or deliveries at three of the insured facilities that have not proven to be financially sustainable.

. . .

48. Plaintiffs have fully complied with their obligations under the policy.

49. On April 8, 2020 Palmer Holdings and Investments, Inc. received a letter from Integrity Insurance Company stating that Integrity had completed their investigation and have determined that there would be no coverage under the applicable policy for the claim. The denial-of-coverage letter is attached hereto and made a part of the allegations of the Petition.

. . .

62. Based on information and belief, Defendant directly or indirectly participated in the insurance industry's efforts to effect state Insurance Commissioners, including the State of Iowa's Insurance Commissioner, to approve the suggested virus exclusion.

63. Defendant incorporated suggested provisions of the Insurance Services Office, Inc. into the policy issued to Plaintiffs, including the definition of covered losses, Civil Authority, and virus exclusions.

Pls.' Am. Compl. [Dkt. No. 17], ¶¶ 10, 13, 20–24, 38, 40–43, 45, 48–49, 62–63.

In Count I of their Amended Complaint, Plaintiffs request a declaratory judgment stating that their losses are covered under the Business Income, Extra Expense, and Civil Authority provisions of the policy. *Id.* ¶ 67. Plaintiffs also request Defendants be estopped from relying on the Virus Exclusion in Plaintiffs' insurance policy, and that the Court order payment of loss of income, including costs and attorney fees. *Id.* In support of this request for relief, Plaintiffs state:

65. Plaintiffs claim damages that are covered under the business interruption and loss of income policy issued by the Defendants, including claims under the Business Income, Extra Expense, and Civil Authority provisions.

66. Defendants have denied coverage under policy BP 2767901 01.

*Id.* ¶¶ 65–66.

In Count II, Plaintiffs allege a claim of breach of contract by Defendants. Plaintiffs request an award of more than $250,000, including interest. *Id.* ¶ 81. Plaintiffs also seek costs, attorneys fees, and all other relief the court deems proper. *Id.* In pertinent part, this count states:

69. Plaintiffs' Policy is a contract under which Defendants were paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy.

70. The Business Income provisions in the Policies require Defendants to pay for Plaintiffs' actual loss of Business Income

sustained due to the necessary suspension of its operations during the period of restoration.

71. Governor Reynolds' Proclamation and/or Covid-19 caused direct physical loss to Plaintiffs' Property resulting in loss of Business Income, thereby triggering the Business Income provision of Plaintiff's Policy.

72. The Policies also provide Civil Authority coverage, which promises to pay the actual loss of Business Income Plaintiff sustained and the necessary Extra Expense cause by action of civil authority that prohibits access to Plaintiff's premises due to physical loss of or damage to the property caused by or resulting from any Covered Cause of Loss.

73. Governor Reynolds' Proclamation prohibited access to Plaintiffs' premises due to physical loss or damage to property resulting in loss of Busines[s] Income and Extra Expense, thereby triggering the Civil Authority provision under Plaintiff's Policy.

74. The Policies also provide that Defendants will pay necessary Extra Expense Plaintiff incurs during the period of restoration that Plaintiff would not have incurred had there been no direct physical loss or damage to the premises.

75. Due to Governor Reynolds' Proclamation, Plaintiffs incurred Extra Expense at Covered Property.

76. At all times material hereto, Plaintiffs maintained reasonable expectations that the loss of business income and additional expenses would be covered under the Policies under the circumstances described herein.

77. The losses described herein are covered losses under the policy.

78. Plaintiffs have complied with the applicable provisions of the Policy.

79. No valid policy exclusion exists to preclude coverage.

80. To the extent the Virus Exclusion would potentially apply, Defendants should be estopped from claiming the virus exclusion excludes coverage under these circumstances.

81. By denying coverage for the claims and losses set forth herein, Defendants have breached its coverage obligations under the Policies.

*Id.* ¶¶ 69–81.

In Count III, Plaintiffs allege Defendants acted in bad faith my failing to fully investigate their claims in good faith and summarily denying their claims. *Id.* ¶ 88. Plaintiffs request an award of more than $250,000, including interest. *Id.* ¶ 89. Plaintiffs also seek punitive damages, costs and attorneys fees, and all other relief the court deems proper. *Id.* Plaintiffs assert:

83. Defendants have a contractual obligation to fully and completely investigate a claim of an insured for policies which they have written and for which they have received commissions.

. . .

85. Defendants denied coverage for Plaintiffs' claim based on a virus exclusion contained in the policy.

86. Defendants failed to make any investigation of the claim and did not inquire if any facility that was insured had any evidence of infestation of the coronavirus or any other virus at any time, or if any employee or customer had become infected with the corona virus or other virus at any time.

87. That there was a complete failure in any manner in good faith to investigate the Plaintiffs' claim and the claim was summarily denied.

88. That the Defendants have acted in bad faith in denying the Plaintiffs' claim, and failing in good faith to investigate Plaintiffs' claim pursuant to Iowa Administrative Code section 191-15.41 (507A) and Iowa Code section 507A(4)(b).

89. That as a direct and proximate result of Defendants' bad faith in failing to investigate Plaintiffs' claim, Plaintiffs have been damaged . . . .

*Id.* ¶¶ 83, 85–89.

Plaintiffs admit they have no knowledge of any of the insured properties being infected with COVID-19 nor are they aware of any customers or employees who contracted the virus. *Id.* ¶ 52. Plaintiffs seek a jury trial on all claims. Plaintiffs seek a declaratory judgment stating they are entitled to coverage under their insurance policy, an award for the loss of income of each of the Plaintiffs plus pre-judgment interest, a monetary award in excess of $250,000 plus pre-judgment interest, attorney fees and costs, punitive damages, and any other relief the Court deems proper. *Id.* ¶¶ 67, 81, 89.

## 2. **Defendants' Motion to Strike**

Defendants' Motion to Strike requests that the Court strike the affidavits of Susan Voss and Elizabeth Robertson from Plaintiffs' Resistance to Defendants' Motion to Dismiss. [Dkt. No. 36]. Plaintiffs offered these affidavits to support their Resistance to the Motion to Dismiss. Defendants contend the affidavits should be struck and should not be considered in deciding the Motion to Dismiss because the affidavits are matters outside of the pleadings that present legal conclusions. Plaintiffs argue that the affidavits are embraced by the pleadings, that the affidavits

do not present legal conclusions, and that extrinsic evidence is admissible to interpret ambiguous policy language.

## II.      Legal Analysis

### A.  Applicable Standards

#### 1.  Motion to Dismiss

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. [Dkt. No. 20]. Rule 12(b)(6) allows a party to argue, by motion, that the initial pleading does not "state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss predicated on Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 440 U.S. 544, 555 (2007)). A complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 444 U.S. at 556).

"In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party . . . are true, and must liberally construe those allegations." *McLeodUSA Telecommunications Servs., Inc. v. Qwest Corp.*, 469 F. Supp. 2d 677, 687–88 (N.D. Iowa 2007) (citations omitted). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 570. "[A] court should grant the motion and dismiss the action only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In deciding a 12(b)(6) motion, courts may consider documents incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public records. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citations omitted). Courts may consider these items without converting a 12(b)(6) motion to a motion for summary judgment. *Id.* (citing Fed. R. Civ. P. 12(d)).

#### 2.  Declaratory Judgments

Parties may seek relief from a district court in the form of a declaratory judgment pursuant to the Declaratory Judgment Act. The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Declaratory relief is proper: "1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and 2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Alsager v. Dist. Ct. of Polk Cty.*, 518 F.2d 1160, 1163 (8th Cir. 1975).

### 3. Construction of Insurance Policies

This case was removed to federal court on the basis of diversity jurisdiction. When sitting in diversity jurisdiction, courts apply federal procedural law and state substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, Iowa law applies to the substantive claims and the Federal Rules of Civil Procedure apply to the Motion to Dismiss itself. *See id.* Under Iowa law, the party seeking coverage under an insurance policy has the burden of demonstrating that a claim falls within the policy's terms. *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991). The insurer bears the burden of demonstrating that a coverage exclusion applies. *Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 41 (Iowa 2012).

The intent of the parties is controlling in the construction of insurance policies. *Farm Bureau Life Ins. Co. v. Holmes Murphy & Assocs., Inc.*, 831 N.W.2d 129, 133 (Iowa 2013) (citing *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 681 (Iowa 2008)). Courts examine the language of the policy itself to ascertain the intent of the parties, except when the language is ambiguous. *Id.* at 133–34 (citing *A.Y. McDonald Indus., Inc. v. Ins. Co. of N.A.*, 475 N.W.2d 607, 618 (Iowa 1991)). Contract terms are ambiguous when the terms are "capable of more than one meaning when viewed objectively by a reasonably intelligent person . . . ." *Phoenix Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815, 822 (S.D. Iowa 2015) (citations omitted). A disagreement about the meaning of terms does not establish ambiguity. *Id.* (quoting *Farm Bureau Life Ins.*, 831 N.W.2d at 133). Additionally, "[a]n undefined policy term does not automatically equate to an ambiguous term . . . ." *Milligan v. Grinnell Mut. Reinsurance Co.*, No. 00-1452, 2001 WL 427642, at *2 (Iowa Ct. App. Apr. 27, 2001). When terms in a policy are undefined, courts interpret the

terms to have their ordinary meaning. *Amera–Seiki Corp. v. Cincinnati Ins. Co.*, 721 F.3d 582, 585 (8th Cir. 2013). Undefined terms are interpreted in light of the policy as a whole. *See Fashion Fabrics of Ia., Inc. v. Retail Inv'rs Corp.*, 266 N.W.2d 22, 26 (Iowa 1978).

To succeed on a bad faith claim under Iowa law, the insured must demonstrate: "(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis." *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002). The first element is objective, and the second element is subjective. *Id.* An insurer's objectively reasonable denial of coverage precludes bad-faith liability. *Id.* at 652. A reasonable basis exists for denying coverage when "the insured's claim is fairly debatable either on a matter of fact or law." *Bellville v. Farm Bureau Mt. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). A court may determine whether a denial of coverage was fairly debatable as a matter of law. *Id.*

### 4. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from any pleading. Fed. R. Civ. P. 12(f). A court may strike these matters on its own accord or upon a motion made by a party prior to responding to the pleading or within 21 days after service of the pleading if a response is not permitted. *Id.* The Federal Rules of Civil Procedure define "pleading" to include a complaint, an answer to a cross claims, an answer to a counterclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer when one is so ordered by the court. *Id.* 7(a). Courts possess considerable discretion in ruling on a motion to strike. *Nationwide Ins. Co. v. Cent. Mo. Electric Coop., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001).

### B. Discussion: Plaintiffs' Claims

### 1. Declaratory Judgment

### a. Business Income and Extra Expense Coverage

For there to be coverage under the Business Income provision, there must be "direct physical loss of or damage to property at the described premises." Defs.' Ans., Affirm. Defs., & Jury Demand, Ex. 1 [Dkt. No. 5-1 at 38]. Plaintiffs focus on the first portion of this phrase, "direct physical loss of." They contend the use of the disjunctive—or—indicates "loss" and "damage" are two distinct concepts, either of which is sufficient to trigger coverage. Pls.' Am. Compl. [Dkt. No. 17], ¶¶ 21–22. Plaintiffs note the policy does not define this phrase or any of its terms. *Id.* ¶ 20.

They contend the policy does not define "loss" as requiring alteration to property. *Id.* ¶ 23. Plaintiffs allege several courts have interpreted "physical loss or damage to property" to include any condition that makes it impossible to use property for its intended use. *Id.* ¶ 24. Plaintiffs contend Reynolds's proclamation caused them direct physical loss of or damage to their covered properties by "precluding customers from patronizing the business, and otherwise frustrating the intended purpose[s] of Plaintiffs' businesses, all thereby causing the necessary suspension of operations during a period of restoration." *Id.* ¶ 41.

Defendants contend Plaintiffs have failed to allege direct physical loss or damage, and therefore they do not fall within the policy's coverage. Defs.' Br. Supp. Mot. Dismiss Pls.' Am. Compl. [Dkt. No. 20-1 at 11–12]. Defendants argue the phrase "direct physical loss of or damage to property" requires tangible loss or damage to trigger coverage, which Plaintiffs have not pleaded. *Id.* Further, Defendants contend Plaintiffs' argument that the proclamation caused physical loss or damage is inconsistent with the proclamation itself, which indicates it was enacted to limit the spread of COVID-19. *Id.* Defendants argue requiring tangible injury is also consistent with the definition for "period of restoration," which contemplates actual structural damage to the insured property. *Id.* at 12.

Plaintiffs respond by arguing that the term "loss" is ambiguous and should defeat Defendants' Motion to Dismiss. Pls.' Resis. Defs.' Mot. Dismiss [Dkt. No. 29 at 14–17]. Plaintiffs note neither the phrase "direct physical loss of or damage" or its terms are explicitly defined in the policy. *Id.* at 14–15. They contend the definition of "property damage" located in another part of the policy indicates that "damage" includes loss of use. *Id.* at 15. Plaintiffs argue that reading the policy as a whole suggests "damage" encompasses loss of use. *Id.*

Plaintiffs also reemphasize their stance on the importance of the use of the disjunctive in the phrase "direct physical loss of or damage." *Id.* at 16–17. They allege the proclamation itself constitutes direct physical loss. *Id.* at 17, 22. Plaintiffs argue the proclamation expressly forbade them to access and use their property "for the income-generating purposes for which the property was insured." *Id.* at 17. Defendants reply and note the definition of "property damage" cited by the Plaintiffs is located in Section II of the policy whereas Plaintiffs claims fall under Section I of the policy. Defs.' Reply Pls.' Resis. Defs.' Mot. Dismiss [Dkt. No. 35 at 9]. They contend the definitions provided in Section II are limited in application to that section, and their interpretation

of the phrase "direct physical loss of or damage" is not inconsistent with the definition of "property damage" in Section II. *Id.*

## Analysis

At the first step of the analysis, the Court seeks to ascertain the intent of the parties by looking at the language of the policy. *See Farm Bureau Life Ins.*, 831 N.W.2d at 133. The Court finds the language of the Business Income provision to be unambiguous. Reading the policy language as a whole, the policy is unambiguous in its requirement that an insured suffer "direct physical loss of or damage" to the insured property to qualify for the Business Income provision. Because the phrase and its terms are undefined, the undefined terms are given their ordinary meaning. *Amera–Seiki Corp.*, 721 F.3d at 585.

Iowa courts have interpreted similar language in insurance policies in the past. In 2001, the Iowa Court of Appeals considered the meaning of the phrase "direct physical loss or damage" in an insurance policy. *Milligan*, 2001 WL at *2. Because the phrase and its terms were not defined in the policy, the Iowa Court of Appeals turned to the ordinary meaning of the terms "loss" and "damage." *Id.* The court determined the terms unambiguously referred to the destruction or injury of the insured property, meaning the alleged loss or destruction must be physical. *Id.* The Iowa Court of Appeals concluded the phrase was not open to any other interpretation. *Id.*

In 2015, this Court interpreted the phrase, "direct physical loss of or damage," in an insurance policy according to Iowa law. *See Phoenix Ins. Co.*, 147 F. Supp. 3d at 821–27. In *Phoenix Insurance Company v. Infogroup, Inc.*, the Court considered whether an insured party was entitled to coverage under an insurance policy's Extra Expense provision after the insured temporarily relocated its business due to the threat of flooding. *Id.* at 818, 821. The Extra Expense provision required "direct physical loss of or damage to property" to trigger coverage. *Id.* at 819. Like the case currently before the Court, the phrase and its terms were not defined in the insurance policy. *Id.* at 823. This Court determined "physical loss or damage generally requires some sort of physical invasion" and rejected Infogroup's argument that the loss of use of their property as a result of the threat of flooding amounted to direct physical loss or damage. *Id.* at 823–24. In so doing, this Court acknowledged its interpretation "comports with other courts interpreting what constitutes 'physical loss' under similar insurance provisions." *Id.* at 823 (citing *Milligan*, 2001 WL at *2).

In reaching this conclusion, this Court noted that interpreting the policy to only require loss of use "would not give effect to the plain language of the policy." *Id.* at 825 (citing *Farm Bureau Life Ins.*, 831 N.W.2d at 133). The Court stated:

> While a loss of use may, in some cases, entail a physical loss, the Court does not find "loss of use" and "physical loss or damage" synonymous. Indeed, interpretation of physical loss as requiring only loss of use stretches "physical" beyond its ordinary meaning and may, in some cases "render the word 'physical' meaningless." *Source Food Tech., Inc. v. U.S. Fidelity and Guar. Co.*, 465 F.3d 834, 835 (8th Cir.2006) (finding no coverage under a policy covering "direct physical loss to property" when property was meat which was not allowed to cross the border into the United States and was thus treated as unusable but in fact suffered no spoilage or contamination); *Pentair, Inc. v. Am. Guarantee and Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir.2005) (affirming district court's finding of no coverage under the policy because "[o]nce physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss ... But [Plaintiff's] argument, if adopted, would mean that direct physical loss or damage is established whenever property cannot be used for its intended purpose.").

*Id.* As such, the Court concluded "physical loss or damage" requires a material loss, which calls for something more than a threat of loss. *Id.*

In 2016, another court in this district considered the meaning of the phrase "direct physical loss" in a dispute regarding when direct physical loss occurred to the insured property. In *Dean Snyder Construction Company v. Travelers Property Casualty Company of America*, the parties disputed whether direct physical loss occurred when a windstorm damaged the insured property or when liability attached to the insured following an arbitration award with a third party for rebuilding costs. 173 F. Supp. 3d at 842–43. The court considered the common usage of the terms "loss" and "physical" to determine when the direct physical loss occurred. *Id.* at 843. Based on the common understanding of the terms at issue, the court concluded an arbitration award does not constitute physical loss. *Id.* at 844.

Plaintiffs, among other reasons, attempt to distinguish their case from *Phoenix* because the decision did not specifically address the significance of the use of the disjunctive in the phrase "direct physical loss of or damage." This argument goes to Plaintiffs' contention that the use of "or" in the policy means that coverage applies when there is either "physical loss of property **or** damage to property occurs." Pls.' Am. Compl. [Dkt. No. 17], ¶ 21. Despite Plaintiffs' attempt to

differentiate *Phoenix*, the Court finds no reason to diverge from its previous interpretation of the phrase "direct physical loss of or damage." As such, the Court concludes the phrase "direct physical loss of or damage to property" requires a physical invasion and loss of use is insufficient to trigger coverage without physical damage to the insured properties. *See Phoenix Ins. Co.*, 147 F. Supp. 3d at 824–26. The phrase is unambiguous and the definition of "property damage" in Section II does not generate ambiguity because this definition only applies to Section II.

Even if the Court assumes loss and damage are distinct concepts that can independently trigger coverage, the terms are unambiguous, and Plaintiffs have failed to allege facts sufficient to qualify for Business Income coverage. *See id.* at 826. Plaintiffs allege that the proclamation caused them direct physical loss or damage by precluding customers from patronizing their business, precluding them from conducting business, and frustrating the intended purpose of their businesses. Pls.' Am. Compl. [Dkt. No. 22], ¶ 41. Although Plaintiffs attempt to paint their losses as physical, they have essentially pleaded loss of use, which is insufficient to establish a direct physical loss. *See Phoenix Ins. Co.*, 147 F. Supp. 3d at 825–26. Even if loss and damage are distinct, the physicality requirement of the loss or damage remains, and Plaintiffs have failed to allege a tangible loss or alteration to property that is sufficient to trigger coverage under the Business Income provision. *See id.* at 826.

The Extra Expense provision requires "direct physical loss or damage" to the insured property to trigger coverage. For the same reasons identified above, Plaintiffs have failed to plausibly allege direct physical loss or damage to the insured property within the meaning of the Extra Expense provision. Because Plaintiffs have failed to allege direct physical loss or damage to the insured property as required by the policy, they are not entitled to coverage under the Business Income or Extra Expense provisions.

Courts across the country have considered the availability of insurance coverage for business closures mandated as a result of the COVID-19 pandemic. Many of these courts considered policy language and circumstances similar to those before this Court, with many courts reaching the same conclusion as this Court regarding the meaning of physical loss or damage. In this district, a court recently concluded an insured party failed to allege any physical loss or damage within an insurance policy's coverage when the insured claimed its loss was a result of COVID-19 and the governor's proclamation suspending non-emergency dental procedures. *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 4:20-cv-CRW-SBJ, 2020 WL 5820552, at *1 (S.D. Iowa Sept. 29,

2020). In *Diesel Barbershop, LLC v. State Farm Lloyds*, a Texas court concluded an insured party's allegation that it lost the use of the insured property because of government-closure orders in response to COVID-19 was insufficient to constitute direct physical loss under the insurance policy. No. 5:20-cv-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020). In *Malaube, LLC. v. Greenwich Insurance Company*, a Florida court held an insured party's allegation that the government emergency orders forced its restaurant to close was insufficient to constitute direct physical loss or damage under the insurance policy. Case No. 20-22615-Civ-Williams/Torres, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020). In *Sandy Point Dental, PC. v. Cincinnati Insurance Company*, an Illinois court concluded the phrase "direct physical loss" unambiguously requires some form of physical damage to the insured premises, and COVID-19 related government closure orders did not amount to direct physical loss to the insured premises. Case No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21. 2020).

Similarly, in *Pappy's Barber Shops, Inc. et al. v. Farmers Group Inc.*, a California court rejected the plaintiffs' contention that the phrase "direct physical loss of or damage to property" does not require tangible damage or alteration to the insured property. Case No. 20-CV-907-CAB-BLM, 2020 WL 550221, at *4 (S.D. Cal. Sept. 11, 2020). The court also rejected the plaintiffs' argument that the government-closure orders themselves caused direct physical loss or damage to the insured property. *See id.* at *4–6. Likewise, the court was not persuaded by the plaintiffs' contention that the use of the disjunctive in the phrase "direct physical loss" did not require tangible damage. *See id.* at 5–6. In *10E, LLC v. Travelers Indemnity Company of Connecticut*, the plaintiff alleged it was entitled to coverage under the Business Income and Extra expense provisions of its insurance policy because the government orders restricting dine-in services at its restaurants prohibited access to its restaurant and prevented the intended use of the property. 2:20-cv-04418-SVW-AS, 2020 WL 5359653, at *1–2 (C.D. Cal. Sept. 2, 2020). The California court concluded the plaintiff was not entitled to coverage under these provisions because the plaintiff failed to allege a direct physical loss or damage. *Id.* at *5. In the case currently before the Court, Plaintiffs cite some cases that are contrary to this interpretation; however, these cases are distinguishable based on their facts. Further, the cases cited by the Plaintiffs are not analyzed on the same level as the cases referenced above.

The Court concludes that it is a settled matter in Iowa law that direct physical loss or damage requires tangible alteration of property and that loss of use alone is insufficient. *See*

*Milligan*, 2001 WL at *2. The Court further concludes that Plaintiffs have not alleged a direct physical loss or damage that is sufficient under the policy or Iowa law. *See id.*; *Phoenix Ins. Co.*, 147 F. Supp. 3d at 825. Because a direct physical loss or damage to the insured property is a prerequisite to trigger coverage under the Business Income and Extra Expense provisions of the policy, Plaintiffs have failed to plausibly plead an entitlement to coverage under these provisions.

**b. Civil Authority Coverage**

To trigger coverage under the Civil Authority provision, a Covered Cause of Loss must cause damage to a property other than the insured property. Additionally, there must be an "action of civil authority that prohibits access to the described 'premises'" in "response to dangerous physical conditions" created by "damage to property other than property at the described 'premises'" that causes "[a]ccess to the area immediately surrounding the damaged property [to be] prohibited by civil authority as a result of the damage" and the insured property is within one mile of the damaged property. Defs.' Ans., Affirm. Defs., & Jury Demand, Ex. 1 [Dkt. No. 5-1 at 40–41].

Plaintiffs allege Reynolds's proclamation was an action of a civil authority that "resulted in the necessary suspension of Plaintiffs' operations." Pls.' Am. Compl. [Dkt. No. 17], ¶ 40. They allege the proclamation itself caused direct physical loss of or damage to the insured properties because it "prohibited access to Plaintiff's Covered Property, and the area immediately surrounding the Covered Property, in response to dangerous physical conditions resulting in and from a Covered Cause of Loss." *Id.* ¶ 42.

Defendants contend Plaintiffs do not meet the coverage requirements of the Civil Authority provision. Defendants argue Plaintiffs have failed to plead physical loss, either at the insured premises or another location. Defs.' Br. Supp. Mot. Dismiss Pls.' Am. Compl. [Dkt. No. 20-1 at 17–18]. They argue Plaintiffs have not alleged Reynolds's proclamation was issued in response to a dangerous physical condition posed by damage at another property or that damage to the other property was due to a Covered Cause of Loss. *Id.* at 16. Defendants also contend the proclamation was not issued as a result of specific physical damage, rather it was issued to limit the spread of COVID-19. *Id.* at 18. Defendants argue Plaintiffs have not alleged their properties were within one mile of the damaged property. *Id.* Further, Defendants allege Plaintiffs were not denied access to their properties because access to the insured properties was not completely prohibited. *Id.* at 18–19.

17

Plaintiffs respond by arguing that Reynolds's proclamation is an action of a civil authority that prohibited access to their property. They contend that the Civil Authority provision does not explicitly state that access to the insured property must be completely prohibited for coverage to apply. Pls.' Resis. Defs.' Mot. Dismiss [Dkt. No. 31 at 23–24]. Plaintiffs argue "the actions of Civil Authorities closing non-essential businesses such as Plaintiff's restaurant evidences an awareness on the part of Federal, state, and local governments that COVID-19 causes damage to property with respect to both the Business Income and Civil Authority claim." *Id.* at 24. Plaintiffs claim the proclamation was issued in response to a dangerous physical condition in the immediately surrounding area, namely, the droplets carrying the virus. *Id.*

Here, the Civil Authority provision unambiguously requires that an order of civil authority be issued in response to a dangerous physical condition created by damage to another property and that the insured property be within one mile of the damaged property. Defs.' Ans., Affirm. Defs., & Jury Demand, Ex. 1 [Dkt. No. Dkt. No. 5-1 at 40–41]. Plaintiffs have failed to plead facts sufficient to qualify for coverage under the Civil Authority provision. They point generally to the physical form COVID-19 may take; however, Plaintiffs have not alleged damage to another property. Further, Reynolds's proclamation was not issued in response to a dangerous physical condition that resulted from a Covered Cause of Loss. Rather, the proclamation was issued to limit the spread of COVID-19. Because Plaintiffs have failed to allege facts sufficient to trigger the Civil Authority provision, the Court need not address whether a civil authority order must completely prohibit access. However, the Court is skeptical that the prohibits access prong would be satisfied when the Plaintiffs were able to—and did—conduct delivery and take-out services at the insured properties. *See Phoenix Ins. Co.*, 147 F. Supp. 3d at 824 (concluding the court could not find a loss of use of the insured property when the insured party still stored data and had employees at the property at the time of the alleged loss of use). Regardless, Plaintiffs have failed to allege facts sufficient to state a claim for coverage under the Civil Authority provision.

Courts across the country have reached the same conclusion in similar circumstances and with comparable insurance policy language. In *Sandy Point Dental, PC*, an Illinois court held an insured party was not entitled to civil authority coverage where the insured failed to allege COVID-19 caused direct physical loss to another property. 2020 WL at *3. The court also noted civil authority coverage was not triggered because the government order only limited non-essential dental procedures. *Id.* As such, the court determined the insured failed to establish that there was

18

an order of civil authority that limited its access to the insured property. *Id.* In *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, a California court found an insured party was not entitled to coverage under the civil authority provision because the insured failed to establish a connection between other damaged property and the denial of access to its business. Case No. 20-cv-03213-JST, 2020 WL 5525171, at *6–7 (N.D. Cal. Sept. 14, 2020). In *10E, LLC*, a California court concluded the civil authority provision of an insurance policy was not triggered when the insured party failed to allege direct physical loss or damage to another property. 2020 WL at *5.

The Court concludes that Plaintiffs have not alleged facts plausibly demonstrating an entitlement to coverage under the policy's Civil Authority provision.

### c. Virus Exclusion

Plaintiffs' Amended Complaint alleges Defendants should be estopped from invoking the Virus Exclusion to preclude coverage. Pls.' Am. Compl. [Dkt. No. 17], ¶ 80. Plaintiffs contend the original adoption of the virus exclusion by the Iowa Insurance Commissioner was secured by misrepresentations and that Defendants directly or indirectly participated in this effort. *Id.* ¶¶ 59, 61–62.

Defendants argue that even if Plaintiffs can establish that they are entitled to coverage under the Business Income, Extra Expense, or Civil Authority provision, Plaintiffs are not entitled to coverage because the Virus Exclusion precludes coverage. Defs.' Br. Supp. Mot. Dismiss Pls.' Am. Compl. [Dkt. No. 20-1 at 20]. Defendants contend the Virus Exclusion unambiguously precludes coverage and that the anti-concurrent clause applies. *Id.* They argue Reynolds's proclamation was directly or indirectly caused by a virus, triggering the Virus Exclusion. *Id.* at 21–22.

In reply, Plaintiffs contend the proclamation itself amounts to a direct physical loss to their covered properties and the surrounding area. Pls.' Resis. Defs.' Mot. Dismiss [Dkt. No. 29 at 25]. They argue COVID-19 was not a but-for cause of their losses because they would have continued operating their businesses despite the COVID-19 pandemic. *Id.* Plaintiffs affirm their stance that Defendants should be estopped from enforcing the Virus Exclusion based on estoppel, unclean hands, breach of good faith and fair dealing, and general public policy. *Id.*

The Virus Exclusion unambiguously states it will not pay for loss or damage that is directly or indirectly caused by any virus, regardless any other cause or event that contributes to the loss.

Defs.' Ans., Affirm. Defs., & Jury Demand, Ex. 1 [Dkt. No. 5-1 at 48, 50]. Plaintiffs' alleged losses were caused by or resulted from a virus, specifically, COVID-19. Plaintiffs' Amended Complaint states their losses were "caused by COVID-19 and/or the Governor Reynolds' proclamation . . . ." Pls.' Am. Compl. [Dkt. No. 17], ¶ 43. Plaintiffs thereby recognize their alleged losses were caused by COVID-19, which triggers the Virus Exclusion. Plaintiffs also recognize their losses resulted from COVID-19 in their Resistance to Defendants' Motion to Dismiss. In their Resistance, Plaintiffs state, "The threat and ubiquitous presence of COVID-19 . . . resulted in Governor Reynolds' proclamation, which in turn caused 'direct physical loss' to Plaintiffs' covered property." Pls.' Resis. Defs.' Mot. Dismiss [Dkt. No. 29 at 22].

Plaintiffs' contention that it was the proclamation that caused their losses rather than the virus because they would have remained open does not save their claims from the Virus Exclusion. Plaintiffs' losses were directly or indirectly caused by or resulted from COVID-19, rather than strictly the proclamation. The proclamation was issued in response to the COVID-19 pandemic as referenced in the proclamation itself. Office of the Governor of Iowa Kim Reynolds, *supra*. The Virus Exclusion is therefore triggered, and coverage is excluded even if Plaintiffs could establish coverage under the Business Income, Extra Expense, or Civil Authority provisions of the insurance policy.

Courts across the country have reached the same conclusion when reviewing similar claims under similar circumstances and insuring language. *See, e.g.*, *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, Case No. 20-cv-04434 JSC, 2020 WL 5642483, at *2–4 (N.D. Cal. Sept. 22, 2020) (concluding the virus exclusion provision with similar language applied under similar circumstances); *10E, LLC*, 2020 WL at *6 (expressing skepticism that the plaintiff could avoid application of the policy's virus exclusion by suggesting in-person dining restrictions put in place to limit the spread of COVID-19 were not caused by a virus); *Diesel Barbershop, LLC*, 2020 WL at *6–7 (concluding an insurance policy's virus exclusion provision applied when the plaintiffs contended the state shutdown order put in place to limit the spread of COVID-19 caused their losses rather than the virus).

Additionally, Defendants argue Plaintiffs' claims are also precluded by the Ordinance or Law Exclusion; however, the Court need not reach this argument because Plaintiffs have not demonstrated they are entitled to coverage under any policy provision, and even if Plaintiffs could state a claim under one of the policy provisions, the Virus Exclusion would preclude coverage.

Because the allegations in Plaintiffs' Amended Complaint do not plausibly state a claim for coverage under the Business Income, Extra Expense, or Civil Authority provisions of the policy, Plaintiffs are not entitled to the declaratory relief requested and dismissal is proper.

### 2. Breach of Contract

Plaintiffs allege Defendants breached their coverage obligations to Plaintiffs by denying Plaintiffs' claims. Pls.' Am. Compl. [Dkt. No. 17], ¶ 81. Plaintiffs contend they complied with the terms of the policy and have suffered losses that triggered the Business Income, Extra Expense, and Civil Authority provisions of the policy. *Id.* ¶¶ 71, 73–74, 78. Plaintiffs argue they had reasonable expectations that their alleged losses were covered under the policy provisions referenced above. *Id.* ¶ 76. They allege no policy exclusions apply to preclude coverage, and if the Virus Exclusion were applicable, Plaintiffs argue Defendants should be estopped from invoking it under these circumstances. *Id.* ¶¶ 79–80. Specifically, Plaintiffs contend Defendants should be estopped from enforcing the Virus Exclusion based on regulatory estoppel, unclean hands, breach of good faith and fair dealing, and general public policy. Pls.' Resis. Defs.' Mot. Dismiss [Dkt. No. 29 at 25].

Plaintiffs allege the Virus Exclusion was included in the policy under false pretenses. Pls.' Am. Compl. [Dkt. No. 17], ¶ 59–61. In support of this contention, Plaintiffs refer to the adoption of this exclusion by the insurance industry over a decade ago. They contend the insurance industry cast the virus exclusion as a clarification for coverage of disease-causing agents. *Id.* ¶ 61. Plaintiffs allege the insurance industry misrepresented to states that the virus exclusion would not alter the scope of coverage when it actually did without lowering premiums. *Id.* They contend Defendants directly or indirectly "participated in the insurance industry's efforts to effect state Insurance Commissioners, including the State of Iowa's Insurance Commissioner, to approve the suggested virus exclusion." *Id.* ¶ 62.

Defendants deny these allegations. Defendants contend that Plaintiffs were not entitled to coverage under the Business Income or Civil Authority provisions, therefore, Plaintiffs' breach of contract claim fails. Defs.' Br. Supp. Mot. Dismiss Pls.' Am. Compl. [Dkt. No. 20-1 at 24]. Defendants contend Plaintiffs lack standing to argue that Defendants should be estopped from invoking the Virus Exclusion. Defs.' Reply Pls.' Resis. Defs.' Mot. Dismiss [ Dkt. No. 35 at 19]. In reply, Plaintiffs affirm their stance that they are entitled to coverage under the Business Income,

Extra Expense, and Civil Authority provisions of the policy. They also affirm their stance that no policy exclusion precludes coverage.

The Court finds Plaintiffs have not plausibly stated a claim for breach of contract because Plaintiffs failed to plausibly state a claim for coverage under the policy for the reasons outlined above. Assuming—without deciding—Plaintiffs have standing to argue Defendants should be estopped from invoking the Virus Exclusion, Plaintiffs have also not plausibly stated a claim to estop Defendants from invoking the Virus Exclusion. Plaintiffs have not alleged Defendants specifically misrepresented the purpose of the Virus Exclusion to them. Likewise, Plaintiffs have not plausibly stated a claim to invoke the reasonable expectations doctrine. The reasonable expectations doctrine only applies to prevent the application of an exclusion in an insurance policy when the exclusion "(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction." *Clark-Peterson Co. v. Indep. Ins. Assocs., Ltd.*, 492 N.W.2d 675, 677 (Iowa 1992) (citations omitted). Before a court even considers these elements, the insured party bears the burden of proving either "circumstances attributable to the insurer which would foster coverage expectations" or that the policy is "such that an ordinary lay person would misunderstand its coverage." *Id.* The reasonable expectations doctrine is not intended to expand coverage on a purely equitable basis. *Id.*

Plaintiffs have failed to plead facts that are sufficient to invoke the reasonable expectations doctrine. The language of the virus exclusion is clear; it explicitly states Defendants "will not pay for loss or damage caused directly or indirectly" by "[a]ny virus, bacterium or other microorganism . . ." "regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . . ." Defs.' Ans., Affirm. Defs., & Jury Demand, Ex. 1 [Dkt. No. Dkt. No. 5-1 at 48, 50]. Based on the plain language of the exclusion, Plaintiffs could not have reasonably expected their alleged losses to be covered. *See Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 504 (Iowa 2013). The Virus Exclusion provision is not one "where only 'painstaking study of the policy provisions would have" revealed an exclusion or neutralized an otherwise reasonable expectation." *Phoenix Ins. Co.*, 147 F. Supp. 3d at 832 (quoting *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 112 (Iowa 1981) (citations omitted)). Even if Plaintiffs had pleaded sufficient facts to make out a claim for the prerequisite, the reasonable expectations doctrine remains inapplicable because they have failed to allege sufficient facts to demonstrate that the policy language is bizarre or oppressive, that the exclusion eviscerates terms explicitly agreed to,

or sufficient facts that demonstrates applying the exclusion would eliminate the dominant purpose for coverage.

Plaintiffs' Amended Complaint does not plausibly state a claim for coverage under the Business Income, Extra Expense, or Civil Authority provisions of the policy. Even if Plaintiffs could state a claim for coverage under these provisions, Plaintiffs' breach of contract claim still fails because the Virus Exclusion would preclude coverage. As such, dismissal of this claim is appropriate.

### 3.   Bad Faith Claim

Plaintiffs allege Defendants have a contractual obligation to fully investigate insurance claims. Pls.' Am. Compl. [Dkt. No. 17], ¶ 83. They contend Defendants failed to investigate their claims and summarily denied their claims. *Id.* ¶ 86–87. Plaintiffs argue Defendants acted in bad faith by denying their claims without an investigation. *Id.* ¶ 88.

Defendants contend they had a reasonable basis to deny Plaintiffs' claims. Defs.' Br. Supp. Mot. Dismiss Pls.' Am. Compl. [Dkt. No. 20-1 at 22]. They argue Iowa courts have consistently interpreted the phrase "direct physical loss of or damage to property" to require tangible harm to the insured property. *Id.* Defendants contend Plaintiffs have failed to allege facts demonstrating a physical loss or damage to the insured properties. *Id.* They also argue Plaintiffs have not alleged physical damage to a property within one mile of the insured properties or facts demonstrating prohibited access to the insured properties. *Id.* Regardless, Defendants contend the Virus Exclusion precludes coverage and that they had a reasonable basis for denying Plaintiffs' claims. *Id.* at 23.

In reply, Plaintiffs note the policy does not define the phrase "direct physical loss of or damage" or define the terms making up the phrase. Pls.' Resis. Defs.' Mot. Dismiss [Dkt. No. 29 at 31–32]. They contend "loss" and "damage" are two separate concepts, and the policy, when read as a whole, indicates "damage" encompasses loss of use. *Id.* at 32. Plaintiffs argue the Virus Exclusion recognizes viruses can cause physical loss or damage. *Id.* Finally, Plaintiffs contend Defendants had no evidence to support their denial. *Id.*

Plaintiffs' bad faith claim fails because Plaintiffs have not pleaded facts that are sufficient to plausibly state a claim for bad faith. The Business Income and Extra Expenses provisions require that there be direct physical damage or loss to the insured property, and Iowa courts have consistently interpreted similar language to require tangible harm to property. *See Milligan*, 2001

23

WL at *2. Plaintiffs have failed to allege any facts that are sufficient to constitute direct physical damage or loss under Iowa law. *See id.* Plaintiffs have not alleged facts sufficient to qualify for coverage under the Civil Authority provision. The Civil Authority provision requires damage to property other than the insured property and that a civil authority order prohibits access to the insured premises as a result of a dangerous condition at the damaged property. Plaintiffs have not alleged damage to another property within one mile of the insured properties. Further, the policy requires access to be prohibited, and Plaintiffs admitted in their Amended Complaint that the proclamation only closed dine-in or in-person service at all bars and restaurants but still permitted take out or delivery services. Further, Plaintiffs acknowledge they provided take-out and delivery services at three of the insured properties. Consequently, Plaintiffs have failed to allege facts that are sufficient to demonstrate Defendants lacked a reasonable basis to deny their claims for coverage under the Business Income, Extra Expense, and Civil Authority provisions. *See Shelly Funeral Home, Inc.*, 642 N.W.2d at 657.

Regardless, Plaintiffs' bad faith claim fails because Plaintiffs have not alleged facts that are sufficient to prevent the application of the Virus Exclusion. The Virus Exclusion precludes coverage for losses caused directly or indirectly by a virus. As demonstrated by Plaintiffs' pleadings, Plaintiffs' alleged losses were directly or indirectly caused by COVID-19 because Reynolds's proclamation was issued as a result of the COVID-19 pandemic. Consequently, Plaintiffs have failed to allege facts that are sufficient to demonstrate Defendants lacked a reasonable basis to deny their claims for coverage based on the Virus Exclusion. *See id.* Additionally, Plaintiffs have not pleaded facts that are sufficient to demonstrate Defendants knew or should have known they lacked a reasonable basis to deny Plaintiffs' claims.

Because Plaintiffs have failed to plausibly state a claim for bad faith, dismissal of this claim is proper.

### C.  Defendants' Motion to Strike

Defendants contend the affidavits of Susan Voss and Elizabeth Robertson that Plaintiffs attached to their Resistance to Defendants' Motion to Dismiss should be struck and should not be considered in deciding the Motion to Dismiss. Defs.' Br. Supp. Mot. Strike [Dkt. No. 34-1 at 1]. They argue the affidavits are matters outside of the pleadings because they were not attach to any pleading, and the contents of the affidavits are not embraced by Plaintiffs' Amended Complaint. *Id.* at 2. Defendants analogize the affidavits to expert reports that include a discussion of the

24

affiants' credentials and their analysis and opinions regarding the insurance policy's language. *Id.* They note the affidavits were prepared in October 2020, indicating they were prepared for the purpose of responding to Defendants' Motion to Dismiss and substantiating Plaintiffs' Amended Complaint. *Id.* at 4. Additionally, Defendants argue the affidavits should be struck because they offer conclusions on matters of law that are for the court to decide. *Id.* They contend policy interpretation is not a factual dispute that is subject to expert opinion. *Id.* at 5. Defendants also note the meaning of terms in an insurance policy is viewed from the standpoint of a reasonable, ordinary person, not an expert. *Id.*

Plaintiffs respond and argue extrinsic evidence may be used in policy interpretation when ambiguity exists. Pls.' Br. Supp. Resis. Mot. Strike [Dkt. No. 36 at 2]. They contend Iowa law contemplates the use of extrinsic evidence to aid in interpreting ambiguous policies, and because Plaintiffs allege the policy is ambiguous, extrinsic evidence is appropriate in this case. *Id.* at 2–3. Plaintiffs argue the affidavits are embraced by the pleadings because they are directly related to paragraphs 21–23 of the Amended Complaint, meaning the affidavits are embraced by the pleadings. *Id.* at 6. Plaintiffs also note that they attached Defendants' letter denying coverage to their original Complaint and the affidavits address this letter. *Id.* at 3. Plaintiffs contend the affidavits do not provide legal opinions but rather discuss principles of the English language, grammar, semantics, and how an ordinary person could believe the policy contained ambiguity. *Id.* at 4. Finally, Plaintiffs contend that if the Court determines the affidavits are outside of the pleadings, then the Court should convert Defendants' Motion to Dismiss to a motion for summary judgment. *Id.* at 8.

The Court finds an affidavit is not a pleading and is not the proper subject of a motion to strike. *See All Energy Corp. v. Energetix, LLC, et al.*, 985 F. Supp. 2d 974, 984 (S.D. Iowa 2012) (citing Fed. R. Civ. P. 7(a)). As such, the Court treats the argument in favor of the Motion to Strike as a challenge to the significance that the Court should accord to the affidavits. *See id.* (citing *Voice Capture, Inc. v. Intel Corp.*, 354 F. Supp. 2d 997, 1007–08 (S.D. Iowa 2004)).[1]

---

[1] The Court's treatment of Defendants' Motion to Strike on matters not included in Rule 12(f) is consistent with this district's approach to similar motions. *See All Energy Corp.*, 985 F. Supp. 2d at 984; *Mahony v. Universal Pediatric Servs., Inc.*, 753 F. Supp. 2d 839, 844 n.3 (S.D. Iowa 2010); *Aurora Nat'l Life Assurance Co. v. Harrison*, 462 F. Supp. 2d 951, 953 n.1 (S.D. Iowa 2006); *Napreljac v. John Q. Hammons Hotels, Inc.*, 461 F. Supp. 2d 981, 1044 n.37 (S.D. Iowa 2006); *Wilson v. City of Des Moines*, 338 F. Supp. 2d 1008, 1023 n.19 (S.D. Iowa 2004).

The Court is skeptical of Plaintiffs' contention that the affidavits are somehow embraced by the pleadings. However, even if the Federal Rules of Civil Procedure permitted the Court to consider these affidavits on a motion to dismiss, the policy language is unambiguous and extrinsic evidence is unnecessary to interpret the policy. The Court did not consider the affidavits in reaching its decision on Defendants' Motion to Dismiss; therefore, the Court did not convert Defendants' Motion to Dismiss to a motion for summary judgment and declines Plaintiffs' request to do so. *See Midwest Disability Initiative v. JANS Enters., Inc.*, 929 F.3d 603, 609 (8th Cir. 2019).

**D.  Defendants' Request for a Declaratory Judgment**

In Defendants' Motion to Dismiss, Defendants request a declaration that Plaintiffs are not entitled to coverage under the insurance policy at issue, meaning there was no breach of contract and Defendants did not act in bad faith by denying Plaintiffs' claims. The Court interprets this request as a request for a declaratory judgment and concludes Defendants are not entitled to the requested declaratory judgment. The Declaratory Judgment Act provides that a court may declare the rights and responsibilities of parties upon an appropriate pleading. 28 U.S.C. § 2201(a). Because Defendants did not make this request in an appropriate pleading, a declaratory judgment is improper and the Court declines to provide one.

### III.   Conclusion

For the reasons stated above and taking Plaintiffs' alleged facts as true, Plaintiffs have not stated a claim upon which relief can be granted. Defendants' Motion to Dismiss is granted.

Upon the foregoing,

**IT IS ORDERED** that Defendants' Motion to Dismiss is granted. [Dkt. No. 20].

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike is denied. [Dkt. No. 34].

**DATED** this 7th day of December, 2020.

The Clerk shall enter judgment for the Defendants.

JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

26